IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES,<br><br>                Plaintiff,<br><br>v.<br><br>RYAN GREGORY BRACKEN,<br><br>                Defendant. | MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT<br><br><br>Case No. 2:24-CR-132-TS<br><br>District Judge Ted Stewart |

    This matter is before the Court on Defendant Ryan Gregory Bracken's ("Bracken") Objections to the Presentence Investigation Report ("PSR"). Bracken raises numerous objections. The Court addresses each below.

    First, Bracken objects to sections the PSR regarding his citizenship and residence. He asserts that he is not a U.S. citizen and "partakes in no citizenship whatsoever."[1] He also states that the United States is not his country of birth. Bracken does not assert that he was born in another country or that he has citizenship in another country. Instead, as before, his arguments echo sovereign citizen ideology. The Court has repeatedly rejected these arguments as baseless and does so again now. Bracken states that he was born in Utah and that he "domiciles on the land of Utah State."[2] This is sufficient for the Court to overrule his objections.

---

[1] Docket No. 110, at 1.

[2] *Id.*

Second, Bracken objects to being referred to as "pro se" in the PSR. To support this argument, he again makes baseless claims referring to sovereign citizen ideology. Bracken represented himself at trial. "Pro se" is a term commonly used to refer to an individual that acts as their own attorney.[3] Accordingly, the Court will overrule this objection.

Third, Bracken objects to the portion of paragraph 6 of the PSR that references the foreclosure proceedings of his home. He argues that he proved at trial that there was no loan, so his mortgage could not have been in arrears, and there was no foreclosure. The Court disagrees. The evidence presented at trial established that Bracken's home was subjected to foreclosure proceedings. The Court will therefore overrule this objection. Moreover, the presence of foreclosure proceedings, or lack thereof, has no bearing on Bracken's guilt here. He also objects to the PSR's use of the word "residence" when referring to his home. The Court will also overrule this objection because there is no legal basis to omit or change the word "residence," which is commonly understood to refer to a place where an individual lives.

Fourth, Bracken objects to paragraph 34 of the PSR which states he has not clearly demonstrated acceptance of responsibility for his offense, and does not include a downward departure for doing so. Bracken argues that he has taken full responsibility for his actions and was not denying his conduct at trial but was instead contesting the legality of the seizure of his home.

---

[3] *Pro se*, Black's Law Dictionary (12th ed. 2024) ("For oneself; on one's own behalf; without a lawyer").

"The defendant has the burden of demonstrating, by a preponderance of the evidence, that he is entitled to a downward adjustment for acceptance of responsibility."[4] "[W]hen a defendant admits the facts necessary to support his conviction, he should generally be awarded a reduction."[5] The Application Notes to U.S.S.G. § 3E1.1, provide that the acceptance of responsibility adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."[6] However, the note goes on to say that conviction by a jury, "does not automatically preclude a defendant from consideration for such a reduction." "In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial."[7]

Bracken was charged with Stalking and Interstate Communication of Threats. To be guilty of Stalking, the government must show, among other things, that the defendant used a facility of interstate commerce to engage in a course of conduct with the intent to harass and intimidate another person. The Court agrees with Bracken that he admitted that he made the phone calls and left the voices messages at issue in the case. However, he did not admit facts to establish the intent element. Specifically, he did not state or otherwise indicate that he made the phone calls and left the voice messages with the intent to harass or intimidate. Further, after the close of the government's case, Bracken argued that the government had failed to present

---

[4] *United States v. Virgen-Chavarin*, 350 F.3d 1122, 1135 (10th Cir. 2003).

[5] *United States v. Cruz Camacho,* 137 F.3d 1220, 1226 (10th Cir.1998).

[6] U.S.S.G. § 3E1.1, cmt 2.

[7] *Id.*

sufficient evidence of intent. The Tenth Circuit has held that a defendant is ineligible for the acceptance-of-responsibility reduction where the defendant denies having the requisite mens rea at trial.[8] Bracken therefore cannot receive an adjustment for acceptance of responsibility because he has not admitted to each of the elements of the crime. The same is true for his conviction for Interstate Communication of Threats. While Bracken admitted to making the phone call at issue, he did not admit to making the phone call with the intent to threaten. Accordingly, this objection is overruled.

Fifth, Bracken objects to "the whole accounting process used to determine his punishment." Bracken states that the PSR "double count[s]" by adding points for the "pattern of activity," which he argues is the same as the "course of conduct" included in the elements of the offense. "Generally, 'impermissible double counting occurs when the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes.'"[9]

The crime of Stalking involves "engag[ing] in a course of conduct" that causes another person to be in fear of death or serious bodily injury or experience substantial emotional distress.[10] "The term 'course of conduct' means a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose."[11]

---

[8] *See United States v. Tom*, 494 F.3d 1277, 1280–82 (10th Cir. 2007); *United States v. Bailey*, 327 F.3d 1131, 1148 (10th Cir. 2003).

[9] *United States v. Jim*, 786 F.3d 802, 815 (10th Cir. 2015) (quoting *United States v. Joe*, 696 F.3d 1066, 1070 (10th Cir. 2012)).

[10] 18 U.S.C. § 2261A(2).

[11] 18 U.S.C. § 2266(2).

U.S.S.G. § 2A6.2(b) provides that the base offense level of stalking is 18, but provides for an increase of 2 to 4 levels if the offense involved "possession, or threatened use, of a dangerous weapon" or "a pattern of activity involving stalking, threatening, [or] harassing," among other things. The application notes to U.S.S.G. § 2A6.2 explain that a

> "[p]attern of activity involving stalking, threatening, harassing, or assaulting the same victim" means any combination of two or more separate instances of stalking, threatening, harassing, or assaulting the same victim, whether or not such conduct resulted in a conviction. For example, a single instance of stalking accompanied by a separate instance of threatening, harassing, or assaulting the same victim constitutes a pattern of activity for purposes of this guideline.

The government argues that looking to the same conduct to support both the offense and the enhancement is not impermissible double counting. However, the notes to the guideline make clear that the "pattern of activity" enhancement must be supported by a "separate instance" of stalking behavior for the enhancement to apply. The PSR applies the pattern of activity enhancement for Counts 1 and 4 through 6. Although the Government's Sentencing Memorandum did not specifically argue which of Bracken's actions supported this enhancement, the government presented evidence at trial that Bracken engaged in a "pattern of activity" supported by multiple instances of stalking behavior to support the enhancement for all four Counts.

For Count 1, the government's expert witness Cory Hess presented Exhibit 23, which displayed phone logs reflecting phone calls from Bracken's phone number to various Salt Lake County organizations. The Exhibit showed that on March 20, 2024, Bracken called the Sheriff's administrative main line six times in rapid succession; on April 1, 2024, he called the same number four times; and on April 2, 2024, he called ten times, again in rapid succession. Further, the Sheriff testified that in early April, her executive secretary notified her that someone had

5

been repeatedly calling the Sheriff's Office asking to speak to the Sheriff, and the executive secretary then played the voicemail left for the Sheriff. Tami Cordova, an employee at the Sheriff's Office, testified that she took a call from Bracken on April 2, that he asked to speak to the Sheriff, yelled, and threatened to kill any law enforcement officers that came to his property. She also confirmed that Bracken called four other times that day. Another Sheriff's Office employee, Lisa Smith, testified that she took the four other calls from Bracken on April 2, 2024, and her recording was admitted at trial as Exhibit 3. The evidence supported that each conversation and voicemail message was aggressive and threatening toward the Sheriff.

For Count 4, Exhibit 23 also reflected six phone calls to the County Assessor's Office on April 1, 2024. Additionally, at trial, the government played Exhibit 6, which was a recording of Bracken's conversation with Deputy County Assessor, Tyler Andrus, who had returned Bracken's phone calls on April 1, 2024. During the recorded conversation, Bracken was highly aggressive and threatening. After Andrus hung up, Bracken called back several times. The government presented three voicemails left for Tyler Andrus at trial as Exhibits 8, 9, and 10, which were similarly threatening and harassing.

For Count 5, Hillary McCormack testified that she started interacting with Bracken in 2023, when her firm was preparing foreclosure proceedings for his home. She testified that she spoke to him two or three times on the phone directly, but eventually she would let the phone calls go to voicemail or told her staff to redirect them because of Bracken's harsh demeanor. She testified that she reported the April 3 series of voicemails to the police based on their content, and the government presented those voicemails at trial as Exhibits 11, 12, and 13. The evidence at trial supported that these calls and voicemails were aggressive and threatening.

For Count 6, Brigham Lundberg testified that he received his first phone call from Bracken on March 8, 2024. He testified that he continued to receive similar calls and voicemails throughout the spring and that these calls were violent and threatening. Further, like McCormack, he reported the calls to law enforcement. The government presented two of these voicemails at trial as Exhibits 14 and 15.

Based on the above-described evidence, the Court finds that the "pattern of activity" enhancement included in the PSR is supported. As to each stalking count, Bracken engaged in multiple separate instances of stalking or harassing activities. The Court finds this enhancement does not amount to impermissible double counting because it is based on separate conduct and serves a different purpose—to punish more extensive stalking behaviors. Accordingly, the Court will overrule the objection.

Sixth, Bracken objects to paragraph 55, which states that he threatened use of a firearm on multiple occasions. Bracken argues he only threatened use of a firearm once. The evidence presented at trial supports that Bracken threatened use of a firearm on multiple occasions. Tami Cordova testified that, during her phone call with Bracken, Bracken stated that any police officers who stepped foot on his property would be shot and killed and there would be "dead cops [on] his driveway." Detective Jacob Fuller testified that Bracken explained that he would defend his property, that he would use 7.62 mm ammunition to do so, and that he was a "crack shot." Hillary McCormack testified that Bracken left multiple voicemail messages stating that he would open fire on anyone who came to his home, and mentioned the specific caliber of bullets and firearms he would use. Brigham Lundberg testified similarly. Based on this evidence, the Court will overrule the objection.

Seventh, Bracken objects to paragraph 69, which has been updated to calculate the offense level at 31. Bracken states that he "feels strongly that this number was obtained wrongfully."[12] However, Bracken does not state how it was wrongly calculated or why he feels it was. Because the Court cannot craft an argument for Bracken, the Court will overrule the objection.[13]

Eighth, Bracken objects to the inclusion of his juvenile records. These records do not affect his criminal history category, and juvenile records are included in presentence investigation reports as a standard practice.[14] Therefore, the Court will overrule the objection.

Ninth, Bracken objects to paragraph 86 which describes "other criminal conduct." The paragraph describes an incident in which Bracken entered a government office and began yelling about cashing in on his birth certificate. He was advised that if he did not calm down, he would be charged with Disorderly Conduct. After being escorted off the premises, he returned and caused another disturbance. Bracken argues that this is not criminal conduct but does not dispute that it occurred. Utah Code § 76-9-102 defines "disorderly conduct" as, among other things, "intending to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk of public inconvenience, annoyance, or alarm" and "mak[ing] unreasonable noises in a public place." Based on the description of the conduct, which Bracken does not dispute, the Court finds

---

[12] Docket No. 110, at 2.

[13] *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("Although a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers . . . the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record.") (internal quotation marks and citations omitted).

[14] Fed. R. Crim. P. 32(d)(2)(A)(i).

that this would amount to disorderly conduct under Utah law and will, accordingly, overrule the objection.

Tenth, Bracken objects to the use of quotes on pages 20 and 21. The probation officer who prepared the PSR has removed the quotes. This objection is therefore moot.

Eleventh, Bracken objects to paragraph 109, which includes a summary of a mental health diagnosis given to Bracken conducted by Judicial Supervision Services. Bracken argues that the probation officer does not have the ability to diagnose him. While this may be true, Paragraph 109 only describes the diagnosis given by Judicial Supervision Services, not the probation officer. The probation officer also included a paragraph stating that Bracken disagrees with the evaluation. Because Bracken does not challenge accuracy of paragraph 109 insofar as it describes the evaluation of Judicial Supervision Services, the Court will overrule the objection.

Twelfth, Bracken argues that the calculated guideline range is "completely over the top"[15] and the punishment should fit the crime. To the extent that Bracken is arguing the guideline range was miscalculated, he does not provide a sufficient basis for the Court to address the objection, except as to those objections discussed above. To the extent he is arguing that the Court should vary downward from the guideline range, Bracken may argue such at sentencing.

Thirteenth, Bracken objects to page 25 regarding the estimated cost of $50,000 for housing the defendant. Bracken argues that charging him that amount is "completely unnecessary."[16] Again, this argument is better suited for sentencing as Bracken is not challenging the accuracy of the objected to paragraph.

---

[15] Docket No. 110, at 3.

[16] Id.

Finally, Bracken objects to a sentence that include probation because it is "unnecessary" and "wasting tax money."[17] Again, the Court will consider this argument as part of the sentencing factors. This is not an objection to the accuracy of the PSR.

### III. CONCLUSION

It is therefore

ORDERED that Defendant's Objections to the Presentence Investigation Report (Docket No. 110) are overruled.

DATED this 13th day of January, 2025.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[17] *Id.*